■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DERRICK THOMAS, Appellant. [860 NYS2d 562]—

Appeal by the defendant from (1) a judgment of the Supreme Court, Queens County (Kron, J.), rendered January 25, 2005, and (2) an amended judgment of the same court, rendered February 9, 2006, convicting him of criminal sale of a controlled substance in the third degree (two counts), upon a jury verdict, and imposing sentence.

Ordered that the appeal from the judgment rendered January 25, 2005 is dismissed, as that judgment was superseded by the amended judgment rendered February 9, 2006; and it is further,

Ordered that the amended judgment is affirmed.

Following a *Hinton* hearing (*see People v Hinton,* 31 NY2d 71 [1972], *cert denied* 410 US 911 [1973]), the Supreme Court directed that the courtroom be closed during the testimony of one undercover officer, and thereafter, upon the People's request and with the defendant's consent, the court also directed the closure of the courtroom during the testimony of a second undercover officer. The defendant contends that the courtroom closure during the testimony of the first undercover officer was overly broad to the extent that it excluded Jean Fortunoff, whom he described as his "cousin," and Kevin Jackson, whom he

described as his "friend," from remaining in the courtroom (*see People v Nieves,* 90 NY2d 426, 429 [1997]), and therefore denied him the right to a public trial (*see* US Const 6th Amend; Civil Rights Law § 12; Judiciary Law § 4; *People v Martinez,* 82 NY2d 436, 441 [1993]).

Just prior to voir dire, after the court explained that only the defendant's family would be allowed to remain inside the courtroom during the testimony of the two undercover officers, the defense counsel requested that two of the defendant's "friends"—Jackson, who was already present in the courtroom, and Fortunoff, who was not present in the courtroom—not be barred from the courtroom.

On the record before us, the trial court did not improvidently exercise its discretion in excluding Fortunoff during the first undercover officer's testimony since the defense provided only a generic and perfunctory description of him as a "cousin" and since it was not clear that Fortunoff, who was not present at the time of the defense request, even intended to attend the trial (*cf. People v Garcia,* 95 NY2d 946, 947 [2000]; *People v Nieves,* 90 NY2d 426, 430-431 [1997]; *but see People v Green,* 221 AD2d 363 [1995]). Moreover, the defendant failed to establish that he and Fortunoff shared a "special relationship" beyond ordinary friendship (*see People v Nazario,* 4 NY3d 70, 72 [2005]; *see People v Council,* 41 AD3d 313, 314 [2007]; *People v Branch,* 48 AD3d 826 [2008]).

Similarly, the defendant failed to demonstrate that Jackson was "linked to him by some tie of more significance than ordinary friendship" (*People v Nazario,* 4 NY3d 70, 74 [2005]; *see People v Branch,* 48 AD3d 826 [2008]; *People v Council,* 41 AD3d 313, 314 [2007]) such as a "special relationship" sufficient to show that Jackson would provide him with "the kind of moral and emotional support that might be expected from a family member" (*People v Nazario,* 4 NY3d at 72). Since the defendant failed to meet this threshold burden as to either individual, the People were not required to establish that either posed a particular threat to the first undercover officer, and accordingly, the court properly excluded both from the courtroom during the testimony of the first undercover officer (*see People v Sweeney,* 25 AD3d 335, 336 [2006]). Fisher, J.P., Dillon, McCarthy and Belen, JJ., concur.